# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE K. WILLIAMS, | CASE NO. 1:14-cv-00557-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 8, 9, 10, 12, 13 |

## **MEMORANDUM**

### I.   Procedural Background

On April 11, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 200-16). On July 11, 2011, the Bureau of Disability Determination denied this application (Tr. 92-123), and Plaintiff filed a request for a hearing on August 10, 2011. (Tr. 126-27). On October 9, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 35-91). On November 16, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 12-34). On January 7, 2013, Plaintiff filed a request for review with the Appeals Council (Tr. 7-11), which the Appeals denied on January 27, 2014, thereby affirming the decision of the ALJ as the "final

decision" of the Commissioner. (Tr. 1-6).

On March 24, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On May 29, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 8, 9). On July 11, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 10). On August 12, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 12). On August 22, 2014, Plaintiff filed a brief in reply. (Doc. 13). On December 4, 2014, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 15, 16).  The matter is now ripe for review.

## II.     Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires

"more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.   Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.  The Commissioner must sequentially

determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV. Relevant Facts in the Record

Plaintiff was born on January 31, 1964, and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 28).

20 C.F.R. § 404.1563. Plaintiff has at least at least a high school education and past relevant work as an assembler and order picker. (Tr. 28, 40).

### A. Function Report and Testimony

On April 29, 2011, Plaintiff submitted a Function Report in connection with her application for disability benefits. (Tr. 269). She reported that her depression interferes with sleep and bathing. (Tr. 265). She reported that she prepared full meals, although sometimes burns food when she depressed, cleaned her apartment, laundered clothes, went outside daily, walked, drove a car, rode in a car as a passenger, used public transportation, shopped in stores, and maintained her finances (Tr. 264-65). She enjoyed sewing and reading as well as volunteering, but when she was depressed, they were" not in her life." (Tr. 266). She reported that she spoke with her family on a daily basis, attended church, and could walk for one mile before she had to stop to rest (Tr. 266-67). However, she indicated that she would not go out when she was depressed. (Tr. 267). She reported problems getting along with authority figures, getting fired due to difficulty getting along with others, and that she was not able to handle stress or changes in routines well. (Tr. 268).

The same day, Plaintiff's boyfriend, Arnold Howard, completed a Third-Party function report. (Tr. 254). He reported that Plaintiff prepared meals, consisting of multiple courses, on a daily basis; cared for her grandson, including

helping him with reading and numbers; laundered and ironed clothes; shopped for groceries; read books; socialized with family; and attended church weekly (Tr. 255-58). He also reported that she is a "challenge," her attitude is "out of control," and "one minute she is happy, next her attitude [is horrible]." (Tr. 254). He reported that she gets angry quickly. (Tr. 255). He reported that when she is depressed, she will not go to work. (Tr. 255). He confirmed that he has to encourage her to bathe and comb her hair when she is depressed. (Tr. 255). He indicated that she goes outside every day "when not depressed." (Tr. 257). He reported that she showed less interest since her impairments began. (Tr. 258). He indicated that she will not "finish sentences," and just "goes to another conversation." (Tr. 259). He reported that she sometimes gets frustrated with instructions. (Tr. 259). He concluded that she "does not have good coping skills." (Tr. 260).

On October 9, 2012, Plaintiff appeared and testified before the ALJ. (Tr. 37). She testified that she had been unable to continue working in 2010 due to the effects of depression on her attendance. (Tr. 43). She reported that she lost her job as a manager at a fast food restaurant due to her "attitude" and an incident where she "grabbed [an employee] by the arm." (Tr. 49). She testified that she lost her job at a "barbeque" place because she "always used to get into altercations with the manager." (Tr. 54). She reported an altercation "yesterday" with her daughter

where she had to get out of a car after screaming at her. (Tr. 56). She explained that she was discharged for noncompliance from drug and alcohol counseling after getting into an argument with the counselor regarding a drug test. (Tr. 56-57). She explained that she had also been discharged from Hanover Counseling due to noncompliance after "going in and out of [her] depression stage." (Tr. 68). She testified that, despite medication, she still has "explosions" and "anger." (Tr. 59). She reported her medication makes her "sluggish in the morning." (Tr. 59). She testified that she had been sent to a combined facility to treat drug and mental health issues for forty-five days earlier in the year. (Tr. 60). She testified that she had to "intensive outpatient" therapy, for twenty-seven sessions, as a result of her involvement in drug court. (Tr. 61). She reported being court-ordered to attend Alcoholics Anonymous classes five days a week. (Tr. 62). She testified that she works for the Rescue Mission hanging clothes fifteen hours per week. (Tr. 62). She testified that she had begun having hallucinations in 2012 that were "creepy" and "scary." (Tr. 65). She also reported mood swings and difficulty finishing tasks. (Tr. 78).

### B. Medical Records

In March 2009, Plaintiff successfully completed in-patient drug treatment at Colonial House (Tr. 345-62). She followed up with intensive outpatient treatment,

but she was discharged when she relapsed and refused to re-enter inpatient treatment (Tr. 412-17).

In June 2011, Dr. Francis Murphy, Ph.D., reviewed Plaintiff's file and issued an opinion. (Tr. 96-109). He opined that Plaintiff's mental impairments caused mild restriction in her activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation, each for extended periods (Tr. 96, 106). Dr. Murphy opined that Plaintiff was capable of performing simple, repetitive work activities (Tr. 99, 109).

Plaintiff treated at Adams Hanover Counseling from February 7, 2011 through March of 2012. (Tr. 441-63). In August of 2011, Plaintiff was discharged from one of the counselors due to sporadic attendance. (Tr. 448). Plaintiff's "distractibility made it impossible for her to absorb any relevant and useful information." (Tr. 448). Plaintiff's diagnoses included bipolar disorder, intermittent explosive disorder, paranoid state, and personality disorder, and she was assessed a GAF of 50 throughout. (Tr. 441-63). She was treated with Seroquel. *Id.*

On April 10, 2012, Plaintiff had a new patient evaluation at Wellspan Behavioral Health. (Tr. 468). She reported depression, anxiety, mood swings, feeling distracted, hallucinations, and paranoia. (Tr. 468). She reported problems

sleeping and hopelessness. (Tr. 468). Plaintiff had depressed and anxious mood, "impaired" concentration, and auditory hallucinations. (Tr. 468).

On June 4, 2012, Plaintiff had a psychiatric evaluation at Pyramid Healthcare. (Tr. 472). Notes indicate that on examination:

> The patient was alert and oriented and displayed positive eye contact that was intermittent. The patient's appearance was appropriate for the situation. It is somewhat younger than her stated age. Her attitude is guarded at first and improved through the interview. The patient's speech is spontaneous; pressured and rapid at times when discussing more emotional issues. Her mood she describes as calm. Her affect is somewhat labile. She became tearful at some times. The patient's thought process is coherent. Patient's thought content is without evidence of delusion or hallucination. Patient denied any current suicidal or homicidal ideations. Patient's short term memory was grossly intact. She recalled three of three items after five minutes. Concentration was fair. She was able to spell the word house backwards correctly. Patient's fund of knowledge is fair. Patient's judgment and insight are somewhat limited. There is a history of poor impulse control.

(Tr. 474). Plaintiff was diagnosed with Mood Disorder, Not Otherwise Specified with Depression! Anxiety; History of Bipolar Diagnosis; Crack Cocaine Dependence; Rule Out Posttraumatic Stress Disorder, and assessed a GAF of 45. (Tr. 474).

In August 2012, Dr. Chrissi Hart, Ph.D., conducted a consultative examination. (Tr. 480). Plaintiff alleged that she slept four hours a night and experienced nightmares (Tr. 480). Dr. Hart observed that Plaintiff was cooperative, oriented, restless, manic, and agitated, and her speech was pressured, slurred, and sometimes difficult to understand (Tr. 480-81, 484). Dr. Hart observed depressed

and anxious mood, a labile affect, fair insight, and borderline intelligence (Tr. 480-81, 484). Dr. Hart diagnosed bipolar disorder, intermittent explosive disorder, and paranoid state (Tr. 485). Dr. Hart opined that Plaintiff's ability to understand, remember, and carry out short, simple instructions was markedly affected by her impairments, and her ability to understand, remember, and carry out detailed instructions and make judgments on simple work-related decisions was extremely affected (Tr. 491). Next, Dr. Hart opined that Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to work pressures in a routine work setting was markedly affected by her impairments, and her ability respond appropriately to work pressures in a usual work setting was extremely affected (Tr. 491). Dr. Hart opined that Plaintiff was unable to work because she was too angry (Tr. 492).

### C. ALJ Findings

On November 16, 2012, the ALJ issued the decision. (Tr. 17). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 27, 2009, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff's bipolar disorder; personality disorder, paranoid state; history of cocaine dependence; and history of cannabis dependence were medically determinable and severe. (Tr. 24). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 26). The ALJ found that Plaintiff had the RFC to:

> [P]erform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple, routine, and repetitive tasks in a low stress job, which is defined as a job having occasional decision making and occasional changes in the work setting. The claimant should have brief and superficial interaction with co-workers and supervisors and occasional interaction with the general public.

(Tr. 19). A step four, the ALJ found that Plaintiff could perform past relevant work. (Tr. 27). At step five, in accordance with VE testimony, the ALJ also found that Plaintiff could perform other work in the national economy. (Tr. 28). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 28-29).

## V.     Plaintiff Allegations of Error

### A. The ALJ's RFC assessment

Plaintiff asserts that the ALJ erred in failing to explain why he rejected portions of Dr. Hart's opinion. Dr. Hart had assessed marked and extreme limitations, and the ALJ assigned "only" substantial weight to the opinion. (Tr. 27, 480). The ALJ explained that:

> [T]his opinion was based only on a one-time evaluation, and the claimant appeared to be more restless and agitated than seen throughout other examinations in the record and based on this I give this opinion only substantial weight. Additionally, I find the claimant's testimony regarding her ability to work with others, and the findings in the record of improvement with consistent treatment and compliance with medication not supportive of Dr. Hart's extreme limitations.

(Tr. 27).

The ALJ did not rely on the state agency reviewing opinion, as the ALJ

wrote that he found Dr. Murphy's opinion to be "less persuasive" than Dr. Hart's because he "never examined the claimant and did not have the opportunity to review all of the evidence, specifically evidence added after the opinion." (Tr. 27).

An ALJ must weigh medical opinions in making an RFC assessment. The social security regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2).  Section 404.1527(c) establishes the factors to be considered by the ALJ when the opinion of a treating physician is not given controlling weight. Under subsections (c)(1) and (c)(2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians and opinions of examining physicians are given greater weight than opinions of non-examining physicians, as discussed above. Section 404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. Subsection 404.1527(c)(3) provides more weight to opinions that are well supported, which means that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."

Subsection 404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Subsection 404.1527(c)(5) provides more weight to specialists, and subsection 404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

An ALJ may not reject a physician's opinion based on an independent review of objective medical evidence. The Third Circuit has explained:

> By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence. Again, if the ALJ believed that Dr. Scott's reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

An ALJ may not improperly rely on treatment notes that do not "reflect[] [the doctor's] assessment of [claimant's] ability tonfunction in a work setting," as the Third Circuit has explained:

> The ALJ's decision to discredit Dr. Picciotto, the consultative psychological examiner who evaluated Brownawell in December 2000, is similarly improper. Dr. Picciotto provided a medical source statement which indicated that Brownawell "had poor ability (no ability) [sic] to function in several areas." A.R. at 303. The ALJ discounted this finding because it "was inconsistent with and unsupported by the text of the evaluation and the clinical signs and findings in the remaining medical record." Id. In support of this contention, the ALJ notes that Dr. Picciotto "stated that [Brownawell] has no ability to maintain attention or concentration[, but] he reported

> in the text of the evaluation that [she] has good focus, good attention, and good concentration." These assessments are not necessarily contradictory, however, as one assessment was describing Brownawell's condition at the time of Dr. Picciotto's examination and the other reflected Dr. Picciotto's assessment of Brownawell's ability to function in a work setting. As discussed supra, this Court has admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work.

*Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008). Specifically, an ALJ not reject a physician's opinion based on treatment notes in the record that a claimant is "stable" or "well-controlled" on medication:

> Dr. Erro's observations that Morales is "stable and well controlled with medication" during treatment does not support the medical conclusion that Morales can return to work. Dr. Erro, despite his notation, opined that Morales's mental impairment rendered him markedly limited in a number of relevant work-related activities. Other information in the treatment records supports this opinion. Thus, Dr. Erro's opinion that Morales's ability to function is seriously impaired or nonexistent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting.

*Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000).

Here, the ALJ's reasoning is unclear. One interpretation of the ALJ's statement that "the claimant's testimony regarding her ability to work with others, and the findings in the record of improvement with consistent treatment and compliance with medication not supportive of Dr. Hart's extreme limitations" is that the ALJ disregarded Dr. Hart's extreme limitations, but credited Dr. Hart's

marked, moderate, and mild limitations. (Tr. 27). However, the ALJ did not include Dr. Hart's marked limitations in the RFC assessment. (Tr. 27). Thus, the ALJ rejected them without explanation. This precludes meaningful review:

> The Secretary must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. *Brewster,* 786 F.2d at 585. The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects. *Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir.1983)

*Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504-05 (3d Cir. 2009) ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review") (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

On the other hand, the ALJ's statement might be interpreted to mean that all of Dr. Hart's limitations not included in the RFC had been rejected because "the claimant's testimony regarding her ability to work with others, and the findings in the record of improvement with consistent treatment and compliance with medication not supportive of Dr. Hart's extreme limitations." (Tr. 27). However, Plaintiff's testimony regarding her ability to work with others only applies to Dr. Hart's limitations in interacting with coworkers, peers, and supervisors. *Supra.* This testimony does not apply to Plaintiff's ability to handle changes in the routine

work setting or responding appropriately to work pressures. *Supra*. Thus, the only justification utilized by the ALJ to reject these limitations was the ALJ's conclusion that Plaintiff improved with consistent treatment and compliance with medication.

The ALJ cited only "Exhibit 11F, pgs. 3-9," which are pages 458 to 464 of the administrative transcript, as evidence that Plaintiff had improved. (Tr. 458-64). These pages contain progress notes from Adams-Hanover Counseling Services between September 30, 2011 and March 30, 2012. *Id.* At every visit, Plaintiff's GAF was a 50. *Id.* Plaintiff was described as "doing well" and "stable," (Tr. 460), but notations that a claimant is "well controlled" and "stable" on medications do not support a conclusion that a claimant can return to work. *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). The state agency physician did not review these records, as they occurred after the opinion had been issued. (Tr. 96-109, 481-92). Consequently, in order for the ALJ to conclude that Plaintiff had "improved," the ALJ had to "independently review[] and interpret[] the laboratory reports," and "impermissibly substituted his own judgment for that of a physician." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). This was improper.

Thus, the ALJ's conclusion, alone, that Plaintiff had "improved" was insufficient to reject the limitations of the consultative examiner regarding workplace stress and changes to routine. Plaintiff's testimony did not contradict

these limitations, and the ALJ did not rely on the state agency reviewing physician to reject these limitations. The ALJ is not required to credit these limitations, but, if rejected, must provide an adequate explanation for rejecting them. The Court remands for the ALJ to properly evaluate and explain the assignment of weight to the medical opinions and Plaintiff's RFC. Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error.

## VII.    Conclusion

The Court finds that the ALJ's decision lacks substantial evidence because the ALJ failed to provide an adequate explanation for the weight assigned to Dr. Hart's opinion. Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.


Dated: March 31, 2015                              *s/Gerald B. Cohn*
                                                                    GERALD B. COHN
                                                         UNITED STATES MAGISTRATE JUDGE